Maria Gomez et al. versus Jorge Rodriguez-Wilson et al. Goodness. Mr. Garcia-Rodon. Good morning. Good morning. May it please the court, Rafael Garcia-Rodon for the appellant, jointly with Mr. Del Valle. I will request two minutes. Pardon me? I would like to reserve two minutes from my time. You may. Mr. Del Valle will argue the part related to obstinacy in the case. I will argue the set-up part. Okay. May it please the court. This appeal is rooted in the failure of the U.S. District Court to apply the precepts of Erie v. Tompkins. In a diversity case, which commands the application of state law. By failing to apply clear state law, which was available at the time that the judgment was entered, the District Court created a conflicting situation, which with negative results. As Justice Brandeis stated in Erie, it made rights enjoyed under the unwritten data law vary according to whether enforcement was sought in the state or in the federal court. Thus, the doctrine rendering possible the equal protection of the law. K.J. Erie v. Tompkins. In this case, this is a malpractice case in which egregious acts of medical malpractice were caused by a doctor. And there was a settlement that was reached. The settlement was not complied between several parties that were brought into the case. One party did not comply to the settlement. The case went to trial. Before you go any further, is there some reason once there was a settlement, that the court certainly recognized was a settlement, that the plaintiff didn't move to enforce the settlement against the doctor? Your Honor, no. The plaintiff did the following. The plaintiff had two options. The plaintiff decided to go to trial with that doctor and settle with the other doctor. That's what we did. But originally, the plaintiff had settled with Dr. Rodriguez-Wilson. We had settled. The plaintiff had settled with every party in the case. Including? Including Dr. Rodriguez-Wilson. Dr. Rodriguez did not comply with the settlement. I was just trying to figure out why once there was a settlement in place, that there wasn't some kind of motion to enforce the settlement. No, because, well, it was. But the settlement stated precisely that. The plaintiff's quote, you know, if it was not complied with, well, we could go to trial. So a verdict was entered only as to Dr. Rodriguez-Wilson. And a judgment of $475,000. After that, the defendant proceeded to file a motion, and the court. Counsel, what was the nature of that verdict? The verdict was. What I mean by that is, was that was the jury asked to determine the total damages that had been caused by Dr. Rodriguez-Wilson. Dr. Rodriguez's negligence? Is that? The jury was asked to determine the total damages caused in this case. By Dr. Rodriguez or just by everybody involved? By, well, the instructions said by everyone involved. But the verdict page itself stated. Do you find by preponderance of the evidence that Mr. Rojeda-Morales experienced pain and suffering as a result of the negligent acts of the defendant, Dr. Rodriguez-Wilson, that should be compensated by him? And there are three instances of that. And then it goes, if you answer yes, go to question four. And then it says, what is the amount that you award Mr. Rojeda-Morales pain and suffering? And it gives a number. That's the verdict form. Which is in the reply brief of plaintiff's appellate. So you read that as the determination that Dr. Rodriguez, not anybody else who was involved in this parade of horribles by the medical providers, that Dr. Rodriguez alone was responsible for these damages reflected in the $475,000 award. Is that how you read it? Well, I read it. And also, Your Honor, Dr. Rodriguez was the only defendant found liable. So, therefore, there is no, there can be no joint and several liability if you have not found the other defendants or parties liable. So this is the only guilty party in this case. And it's my understanding that the defendant didn't request an instruction on joint and several liability. Is that correct? No. And he did not even request an instruction that there had been other defendants in the case and that they could have been negligent, too. And he never presented evidence regarding that. So, in reality, you cannot be a tortfeasor if you have not been a judge of tortfeasor. So the only tortfeasor in this case, legally speaking, is Dr. Rodriguez. And then there is no appeal in this court by Dr. Rodriguez as to the negligence and to the percentage of negligence also in this case. So what happened? The court, using Villarini, a decision of this court of 1997, subtracted the full amount of the settlement from the verdict in this case using a formula of dollar-for-dollar reduction. The problem is that Villarini, that was decided in 1997 by this court, stated at that particular time that given the absence of Puerto Rico president, this court was going to use a dollar-for-dollar offset. But the court specifically spoke that if the Puerto Rico courts had spoken to the precise question before us, their expressed view would be followed here. But no such thing has been cited to us. Also in Villarini, the court stated and made clear that it would be the case until Puerto Rico instructs otherwise. Well, Puerto Rico instructed otherwise. Not only that, the case of this court in Riomara Associates versus UHS, 52 Federal 3rd, 159, 2008, specifically said, Finally, Villarini-Garcia was decided in 1997. In our view, its reasoning has been colored, informed, and to some extent limited by the later decision in Senray. Senray is a Puerto Rico Supreme Court case which is cited in our view. In this regard, it is especially noteworthy that the Villarini-Garcia's court focus on the Puerto Rico court's general hostility to double recovery has been blurred by the Puerto Rico Supreme Court's subsequent selection, I underline, subsequent selection of a proportionate set of rule for joint or fissure cases. Despite the fact that under this rule, plaintiffs might sometimes receive more or less than full and fair compensation for their injuries. See Senray, see Blas. That's a quote from this court in Riomara in 2008. In that particular year, the Puerto Rico Supreme Court rendered another appeal, which is U.S. Fire versus Electrical Power Authority, 174 DPR, 846, 2008. So did the district court, what did the district court do with Segoria? Did the district court just ignore the case? Just ignore the case, Your Honor. Segoria, let me address that. Segoria was a case decided one year after Riomara by this court, 2009. And it's on point, on point with this case. You better come to a conclusion.  It's on point with this case. In Segoria, the court stated a court of appeals, Puerto Rico Court of Appeals, was reversed by the Puerto Rico Supreme Court just because it did the same thing as the district court. It subtracted the $200,000 from a settlement from a judgment when the doctors have not been found liable. And it stated that that's not double enrichment. On the contrary, if a non-settling defendant is allowed to pay nothing in a case, it will be worse a situation than double enrichment. Okay? Thank you. Thank you. Mr. Del Valle, good morning. Good morning, Your Honor. Your Honor, Attorney Carlos Del Valle on behalf of the appellants also. We wish to address the issue where we charge that the district court abuses discretion by not sanctioning plaintiffs with, I'm sorry, defendants with attorney's fees for obstinate court law. Since this court's decision of the Leon in 1991, the standard has been pretty clear. It is obstinate conduct in litigation if you defend a case with unfeasible stubbornness. And particularly, they focus on several factors, whether the facts, the liability was easily discernible, whether the negotiations as to the settlements were engaged in bad faith, and whether that person disobeyed the court's order. And the record shows that all three factors are present here. With respect to the case, as Judge Lopez-Elipiz mentioned, it is easily discernible that this is a person who went into the hospital for easily correctable knee, astroscopic knee surgery to correct meningitis, and never came out of the hospital. The hospital, Dr. Rodriguez cut off his left artery, and as a result, he developed gangrene. They had to amputate his leg. But, Counselor, the defendant doctor is a doctor and an expert in his own right. I mean, why doesn't he have the right to take the witness stand to say, I followed the appropriate standard of care in this case, and let a jury decide? Why is that being obstinate as opposed to simply having his day in court? That's a very good question, and the answer will be double. First of all, he reached, as you mentioned, he reached a settlement of this case. I mean, for very obvious reasons, all the parties settled the case prior to trial. But after he had the benefit of that settlement and he knew the amount, he was reneged for no reason at all as to the settlement. That's why I asked, because I thought that there was another remedy available to him, which was a motion to enforce the settlement agreement as opposed to going to trial. It's my belief that the settlement agreement, which was filed under seal with the court, provides that if one of the parties pulls out, the plaintiff has the option of going against all the parties together. I think that's what happened here. Judge Cereso, and this goes to his obedience of the court, Judge Cereso tried to recompose the settlement agreement and called him into court in the final settlement at conference before the second trial. She set the trial apart and then scheduled the case against for a second trial. At that time, she called Mr. Rodriguez. Mr. Rodriguez simply did not show up to the chamber, to the judge's chamber. All the other parties settled the case after the second trial. Once the case was, the first trial setting was set apart, she set the case again for a second trial. Every party settled again except for Dr. Rodriguez on this occasion. She called him in chambers, non-chambers for a settlement conference. He did not even show up. So that's part of the obstinate conduct itself. But perhaps my third point and most important point is that defense was purely pro forma. I mean, the plaintiffs brought their other witnesses. They brought their hospital witnesses. They brought two expert witnesses. Dr. Rodriguez didn't bring a single witness. He didn't bring a single one of the co-defendants. He didn't bring any expert witness to contradict the other expert witnesses. He did not file any cross appeals against any of the other parties, alleging that they had in any form or matter contributed to the negligence that occurred in this case. Therefore, he was completely, basically he just showed up to court and committed what we believe is an abuse of judicial process. Thank you, Your Honor. Thank you. Mr. Schell, good morning. Good morning, Your Honor. If you may please record, Your Honor. Mr. Schell, could you please engage the Zagardia case? Oh, yes, Your Honor. I would like to tackle the Zagardia case head on. Zagardia case, yes, it came out in 2009 contemporaneously with the decision in Rio Mar. The Zagardia case is very distinguishable from this case, Your Honor, in the sense that in Zagardia, the parties that had settled prior to trial, their liability was a judge at trial, and the court expressly ruled that the parties that had settled had not incurred in any liability whatsoever towards the plaintiff. Thus, the court ruled that the payment that they made could not be taken into account because the defendants were paying for their own liability as those parties were not a judge liable. On the contrary, the parties were, the court specifically ruled that those parties were not liable. It's not like in the case at hand in which the whole scenario was brought up to the court, the whole damages were brought up to the attention of the jury, and no mention was made whatsoever as to the other parties that had settled, Your Honor. Isn't that fatal to your case, though? Your Honor, I think it is. Hang on. Hang on. You cannot interrupt the jury. I know, Your Honor. I'm sorry. There was no request made by the defendant for any kind of apportionment of liability. The jury verdict strictly asked if your client was negligent, and if so, in what amount was he negligent. It didn't say anything about any other tort feasors. I believe it's a doing of both parties, both plaintiff and defendant. No. That's not what the jury verdict says. That's not what the jury verdict form says. It doesn't say anything about anybody except for the doctor. The contrary. What happened at the jury conference was, at the charging conference was that the plaintiff brought up the case of Rio Amaro Associates. Rio Amaro Associates, just as in this case, an initial tort was committed. Thereafter, along the chain of events, the initial damage was aggravated by a second party, and the court, following Puerto Rico's rule of law, said that the initial tort feasor was liable for everything that had happened down the chain of events. That's how they convinced the district court that the whole case had to be submitted against our client. All the damages. And in order to avoid that, Your Honor, what the court did in the Rio Amaro Associates said, you had to subtract from the judge, from the total of the verdict, the amount paid by the selling defendants, or the other scenario, to pay its own percentage of liability. Whichever of the two amounts is lesser. Because you cannot pay anyone more than what his damage has been assessed. But we don't know. The jury wasn't asked to assess his total damages relative to the whole chain of events and the possible co-tort feasors. The jury was only asked to assess damages relative to your client specifically. No, the jury was asked to value the whole case. So that brings in your words, Your Honor. That's not how the jury instruction reads. Well, not the instruction. We're talking about the verdict. The instruction, what it didn't mention, is you had to make him whole. Make him whole. You had to consider all the damages. The verdict said one thing. The instruction said another one. The instruction, the district court clearly set forth that its instruction considered the totality of the damages. That's why we believe that your pronouncements in Portuguese and Tana come into play. That this is a typical situation in which calls for an offset. You specifically, in 2013, with the benefit already of Sargardia, your expressions go straight to the point that this is the kind of case in which you have to make an offset. In which various individuals have intervened with the patient and the totality of the damages have been considered. And your expressions were specifically the following. The principle that no one should or may unjustly enrich himself by receiving double compensation for the same accident. This is what happened here. They want to convert a $475,000 verdict into $1,175,000. 250% more, Your Honor. Cases addressing offsets. Counsel, how do you respond to your opponent's point that we don't really have joint tort fuses here. You have a settlement that was reached by the other defendants. They agreed to pay $700,000. But there's no court determination of liability at all. The only determination of liability is with respect to Dr. Rodriguez. We usually get these offset situations where you have joint tort fuses, a finding of total damages, which any one of them could be held responsible for those damages, creating a possible contribution situation. We do get offsets in that situation. We don't have that here. We only have one court-determined tort fuser here, and that's your client. Well, Your Honor, I agree with you. My client was the only defendant that went to trial. There was no determination made as to joint tort fuses. But that doesn't change the fact that the plaintiff received $700,000 prior to trial from the three defendants that settled, and his damages were adjudged at a lesser amount of $475,000, Your Honor. He received more at trial. I'm sorry, Your Honor. Well, I'm sorry to interrupt you, but it seems to me that what's happened here is the settlement paid for the liability for the negligence that those people that settled caused. And the verdict, which was a separate trial altogether, established that your client was responsible for his negligence in that amount. So I don't see where, without having a judgment that includes both of them, you could have settled. Your Honor, you have a point there precisely, because, remember, we cannot separate the liability of those individuals that settled from the damages that those individuals caused. That's what brings in the doctrine that apportionment, you know, that an offset should be made here by the amounts paid by the prior, by the settlement. Why they don't cover the same thing? I'm sorry? You seem to agree with me that they do not cover the same negligence. One is the negligence of those that settled, and one is the negligence of the one that didn't settle went to trial. Yeah, but we cannot separate that those negligence acts caused damage. And those damages were a judge of $475,000, and my client was a judge liable for those damages caused by the selling defendants. You know, we cannot separate the negligence from that. I haven't read the record, but you can help me with this. At the trial, was there any evidence as to your client's strike that? Was there any evidence as to the negligence caused by those that settled? Well, yes, Your Honor, because my client had only been in charge of the patient for a limited amount of time at a single hospital. The patient was later on transferred to a second hospital where he did undergo all the complications of the amputation. There was an issue if the amputation had to be done below the knee or above the knee, and that's where he ultimately died. As a matter of fact, he's Well, it seems to me that it's even easier to determine on the basis of what we've discussed here and what I read in the briefs that there was a separation of the negligence responsibility. But not for the damages caused. Because remember, he suffered some different damage down the road. Yes, Your Honor. Is there someone who testified at trial that other care providers breached the standard of care owed to the plaintiff? The only one who testified on behalf of a trial was Dr. Jordan Wilson himself. Did he testify that the other care providers breached the standard of care? No, he did not, Your Honor. So there was no evidence of negligence on the part of anyone else except for your client then? Yes, but then again, we are separating the evidence of negligence from that of the damages caused by that negligence of the other parties, which were taken into account when the jury was asked to value the whole array of damages caused to the plaintiff. And my client is being liable not only for the damages caused by himself, but also to those of the selling defendants. That's why, again, Your Honor, Judge Thompson, that's where your words come into effect, as said in the Portuguese Santana. This is a typical case to do that. It's a little bit different, but it's your argument. I'm sorry, but you know, great minds do defer. Thank you, Your Honor. That will be it. Are there any additional questions that you may have, or else we'll have five seconds? Are you asking me that you – well, I have no questions. Thank you, Your Honor. Thank you. Ms. Velez, who do you represent? Yes, Your Honor. I am Rebecca Velez for Dr. Jorge Rodriguez-Wilson, and I will be discussing the abstinent conduct area. Look, I'm going to save you some time. Did your client reach a settlement at one point? Yes, he did. And then he, for whatever reasons he may have, he decided not to comply with it? Yes, Your Honor. And there had to be a trial, and the other parties had to spend money and time, et cetera, in the court in trying the case that he had already settled? Your Honor, could you please repeat that? Well, it seems to me that if your client reached a settlement and then refuses to comply with it and forces the parties to go to trial and prove the negligence that he had already accepted at one time, that that is an abstinent conduct. Tell me why I'm wrong. Your Honor, our client, at some point of the settlement, evaluated some evidence, and that's where he changed his course of action, and that's why he decided and requested that we exercise his due process and that we would defend his case. And we did zealously defend his case. As a matter of fact, defendant demonstrated what he did, and all through the trial, and even with the evidence that plaintiffs presented to the jury, our client still believed and portrayed to the jury that how the procedure was done and the evidence also demonstrated that not only my client took care of the patient, but that afterwards that same patient, which had multiple preexisting conditions that would also complicate the situation, went also to another hospital and underwent many other surgeries. As brother counsel shall explain before, there was a really complex issue as to whether the amputation should have been above the knee or below the knee. As to my client's testimony, he clearly testified that given that after the arthroscopic procedure, the patient could not urinate, he decided to admit the patient so that the patient could be taken care of and so that everything else could be ruled out as they usually do in medicine. Counsel, you say these were complex medical issues. The defense consisted entirely of Dr. Rodriguez's own testimony. No experts were brought in to try to help the jury understand these complex medical issues. Is that correct? Well, Dr. Rodriguez-Wilson testified as a witness, but he also explained to the jury what the arthroscopic procedure consisted of. And it was not, to correct brother counsel LaValle, it was not meningitis. It was a torn meniscus. So in that sense, he presented the jury with the instruments that he used. He explained to the jury how he performed said operating procedure. And being an expert himself, he relied on his testimony. Counsel, you understandably, you invoke the abuse of discretion standard. This is a quintessential discretionary call for the trial judge whether the defendant has been obstinate. But we don't have a word of explanation from the trial judge. Does a wholly unexplained summary decision from a trial judge deserve any kind of discretion from us? I'm sorry, Your Honor. Can you please repeat that again? The trial judge did not explain the decision at all. I understand that the nature of the decision, it is a discretionary call whether the attorney's fee should be awarded. But in the absence of any explanation at all, why should we defer to that decision? Your Honor, because the district court had three opportunities to determine that my client and defendant, Dr. Rodriguez-Wilson, was obstinate. District court was acquainted with the nuances and was familiarized with the case. And it had three opportunities. Number one, at the beginning of the case and the settlement meetings that we held, settlement conferences. Number two, on the last settlement conference that was held, and the last one, in which on docket 72, consisting of the minutes of the proceedings and final settlement conference, and may we quote, it says, in any event, it is clear to the court, may we proceed, that Dr. Rodriguez-Wilson is not interested in discussing settlement in this case. For that reason, the court did not compel his appearance. End of quotes. The court had a third opportunity to determine if my client was obstinate or demonstrated obstinate conduct. Because she was able to perceive firsthand during the trial as the final step of the process. The gestures, contradictions, everything that had to do with not only the witnesses, plaintiff's witnesses, but also as to my client. Should the court have found that my client was obstinate, they had clear discretion to impose attorney's fees, yet the honorable court did not. Furthermore, should the honorable district court had found that my client was obstinate, we wouldn't be arguing orally this case. The case would have been decided basically on the briefs, and quoting Dock versus Spritzford, and just to mention what plaintiffs have been trying to do all this time. Just because you call a dandelion an orchid, does not make it suitable for a corsage. For those reasons, and given that there was no obstinate or frivolous conduct that could be identified whatsoever during the trial, otherwise the court would have exercised its discretion. For those reasons, I argued that my client was not obstinate, and therefore the district court's judgment not imposing attorney's fees should be affirmed. Was the doctor's insurance carrier defending him in this? No, Your Honor. Our client is self-insured. Under Puerto Rico law, may we explain a little bit more? Go ahead. Under Puerto Rico law, both medical practitioners as well as hospitals, they abide by the security code. In Spanish it's Código de Seguros. Insurance code. Insurance code, I'm sorry. And what they do is that they provide different alternatives to either medical practitioners or to hospitals. One of the options that my client had was to establish a self-insured fund, a trust, or to those ends, that mechanism. As to hospitals, they can also do that, and that would be a little bit more technical. I was just trying to figure out why I didn't get an expert witness. He didn't think he was negligent. Well, Your Honor, without entering into privileged matters, we did all that we could, all that was within our reach, to contract an expert witness. All right, thank you. You're welcome. May we? Yes. Oh, are we due? Oh, I forgot. He has two minutes. Pardon me? Yes. For the record, Rafael Garcia-Rodon. Yes. I would like to call your attention to the brief of plaintiff's appellant page of the addendum, in the addendum pages 23 and 24. I think those two pages express the same case as we're having here. The Supreme Court of Puerto Rico in Zagardia, and this is the Zagardia case, in its judgment, discounted the $200,000 from the total damage granted under the mantle of equity. It sustained that if said amount is not deducted from the total amount granted by the sentencing form, it would constitute a double compensation. Then it said, nevertheless, and this is the court, the Supreme Court, we understand that according to this norm, we can dispose of the controversy with having to resort to equity. Furthermore, the possible effects of collecting more for the risk assumed in a settlement agreement does not constitute a double compensation for the damage suffered. On the other hand, to sustain the decision of the appellate forum would be to benefit the co-defendants who did not contribute anything in the consecution of the settlement agreement. They would pay less than what corresponds to them, thank of a settlement agreement in which they did not form part. I think that those words express this case. I think that even in the best scenario for the defendants, this case solves the issue. Thank you.